Good morning. Assistant State Steering Academy Nedarkova on behalf of the people. Good morning. How much time would you like? Full time. Okay. Yes, sir. Mr. Orenstein. May it please the Court, Counsel. Your Honor, my client committed several offenses. He committed domestic battery. He committed theft. And he wasn't charged, but I'm sure he committed criminal damage to property. But the State failed to meet its burden with respect to two elements of the offense of burglary. That my client entered the home of another and that he entered it without authority. The State can't seriously dispute that 7611 South Sagamore was his home. As far as the record shows, this was his only home. Well, let's start with without authority. How can you say he had authority when he had to break the bars on the window and then break the window to get in? And Ms. Harris had told him, have somebody come in and get your clothing. Well, because she did not have, because, well, I don't know if she did or not, but the record failed to show and the State failed to show that she had authority to say that. Because there was no evidence of who had the lease, that there even was a lease. What arrangements had anybody made? Who was paying rent, for example? Well, it wasn't. We don't know. There was no evidence that he was not paying rent. There was no evidence who was paying rent. I mean, there was no evidence that she was paying rent. For all the records show, her mother could have been paying the rent. Now, we don't know. But there was no evidence that she, of what, any of the arrangements. We do know one thing. He did not have keys. No. We do know that. We do know that. He did not have keys. We do know that. But she explained that. She testified that they had an arrangement where either she would let him as she was there or she would leave a key. And she agreed that so he could come and go as he pleased. It was not a matter of, well, you can come sometimes when I will give you a key. And that's no different than the Bell case where you have a girlfriend who didn't have a key. But it was found that she had a right to be there. She had at least as much right as the defendant. The closest he got to a key was when it was under the mattress. Isn't that right? I don't know about under the mattress. But it had an arrangement where he could get in when he wanted. It did not involve a key. So she left it there for him? That's true. But is it when he wanted or when she wanted to let him in? No, it was when she had the key. She had to give him permission. Just so we can get off the point and get to his point, the testimony she said was, from time to time I would leave him my keys so that he could come and go as he pleased. That is correct. That's her testimony. Right. Okay, so. So there's that. But as far as the relationship between the parties to the property, there is absolutely no evidence of that whatsoever. But was the relationship only when he was an invitee? No, because he lived there. She said he lived there. She said it was his home. She testified to that. Did he live there? Yes. That is all you need because he's an occupant. He's an occupant. He has a right to be there. But the way the record reads is on the 16th of March was the day that that was expounded on. That was it. That was the day that he was there by permission. No, he lived there for 10 months I think was the evidence. No, but he lived before. But she terminated. She said she terminated his coming into that. That's what she said. And what I'm saying is two things. The first I've sort of said already is that the record failed to show the relationship between the two of them as far as whether a contract or rent or anything else. The second thing is even if she said that and even if ultimately she could have made that stick in a court of law, he still had a right to possession until he was legally removed. And that's where the Evans case comes in. The Evans case is a case just like this one except it was about trespass, not burglary. The defendant moved in. He refused to pay rent. He refused to sign a lease. It was a roommate situation, not a separate apartment. And he was convicted of trespass, and it was reversed because he lived there. He was an occupant. He could not commit trespass. And the only difference between trespass and burglary is a mental state. There was no value intended committed felony. So what tests are we using when you say she said he lived there? I mean, she also said when he doesn't live there anymore, have somebody come and get his clothing. Once he lives there, she can't say that. That's my idea. So if somebody comes and lives with you for a day, then you have to go to court to get them out. If they refuse to go? Well, I mean, if you say, if I testify, the testimony is he lived with me for a day. Not if he lived with me for a day, but if he lived with me for a day, would he be understanding that this was his home? How does somebody show understanding? Now, is that intent? Are we looking at intent? You look at intent, and you look at the overall facts. This was not just one day. This was he lived there for a number of months. I believe it's at least 10 months, but I'm not sure about that. Three or four years. Three or four years. Like three or four years. Off and on. Off and on. In the detention. That is true. But I mean, detention, you know, I don't think people would consider that your home. When you live in detention, you want to go back to your home. But the issue is, if you're an occupant, you can be removed by an eviction or an order of protection, but not because someone who you live with says, even if their interest is in some sense superior to yours, okay, you're out of here. If you look at the law and compare it for the residential burglary statute, and compare that to the home invasion statute, they use the same words. Right. And in the home invasion statute, you have to show a possessory interest and a tenancy interest in order to say that that's your home. Right. That you live there. Very well, then. Are you saying that we should do something different under this statute? No, if you're a tenant, and really you're a tenant, and if you live there, and a tenancy can be expressed by behavior, not just behavior. Tenancy and possession. If you are in possession, you have a tenancy or will. I think that's the ‑‑ I'll have to give it to you on your own. It's a case of setting it by brief. It's not a criminal case. So who has the greater right? What? Who has the greater right to possession? They both have rights to possession. Who has the greater right? We don't know. We don't know. We have no facts on that. We don't know who owned the lease. We don't know who paid rent. We don't know if it's an ownership. We don't know if it's a tenancy. We don't know who owned it. We have no facts on that. Now, the one thing we have, we have the key. But as I said, in the Bell case, which is very similar to this case, you know, the girlfriend didn't have the key. And also there could be a lot of reasons someone doesn't have the key. She might lose keys all the time. They might have an arrangement. There was no evidence that. There was no evidence that she kept the key in order to maintain control. The state certainly never asked her why she had the key. Jump to another element, if you would. Burglary traditionally was an unlawful entry into a location with the intent to commit a felony or theft. Right. Quite honestly, my reading of this record indicates that this was, according to the female. Right. She was in a relationship with the defendant, as she said, for three or four years. Right. They were boyfriend and girlfriend. Right. I didn't realize that he didn't come home that night. She was upset. Until about 1030 in the morning when the phone called. Right. The phone rang, and she finally answered it. And she told him, don't come back. Right. Get somebody to get your belongings out of here. Right. And she hung up on him. Right. And he got to the house, and she wouldn't let him in. And he broke down the window and entered the house. No doubt about that. Right. So where at that point is the intention to commit a felony or theft therein? If he was told to get his belongings out of there, although she didn't say, you come and get your belongings out of here, it was get somebody to get your belongings out of there. Where is the evidence of an intent to commit a felony or theft? Now, granted, he walked out with a computer that, according to his own statement, that introduced in the state's case, he did it to aggravate her. He did it to aggravate her. I want to add one point to that. When you talk about committing a theft, I believe, although I haven't looked, theft means to permanently deprive. It's very clear he was not intending to do anything but express his own anger. I mean, this was a computer with a built-in monitor. He was walking. He took it out. He was carrying it. It was on his stomach. He carried about two blocks for as long as the police could get there. All the police needed to do was follow the trail of blood. He was obviously furious, and he lost control. And certainly, I'm not arguing insanity defense. But I think you could certainly argue, and I would argue, that he did not have intent to commit a theft because he did not intend to permanently deprive her of that computer because he had no expectation that he would get caught for one day. Did they establish an intent to commit a felony inside the location? I don't believe they did. But you didn't raise that issue? I did not raise that issue. I'm not going to ask a question. I'm answering as best I can. No, I did not raise that issue. He took the computer. Did he own a half interest in that computer? Did he help her buy the computer? He testified that he did. She testified that he did not. And so that's the only answer I can give you. All right. And was her hair pulled by him when he went in? Her hair was pulled by him, and it's not clear if he was trying to take the phone or if he was trying to pull her hair. I believe the custodial statement was that she was on the phone, and he wanted her off the phone. It was part of it, and he took it away. And so I'm not clear if he intended to pull her hair or not, but there was that testimony, yes. And that constitutes a battery? I would think so. Well, you're not contesting the domestic battery. No, we are not contesting or challenging the domestic battery. Okay. So with that, I think, unless there's any other questions on Issue 1, and I'll touch very briefly on Issue 2, the evidence shows that as far as the complainant was concerned, my client lived there at least until 1030, or whenever the phone call was made. There was no question that he lived there until then. But the judge said there were times when he lived there in the past and not this date. You can't square the judge's findings with her testimony, and you can't square the due process with the judge's findings, because they went to the heart of the issue. So unless there are any other questions, I ask that this Court reverse all right or any alternative, demand for a new trial. Thank you. Thank you. Mr. Kova. Yes, Your Honor. Thank you. Again, Assistant State Attorney Katarina Dracova on behalf of the people. In the instant case, the people have proven beyond a reasonable doubt  The evidence in this case presented at trial and taken in the light most favorable to the people indicates that defendant entered the dwelling of another without authority on March 16, 2018. But the issue isn't, that's not the issue. The issue is whether that was his dwelling as well, right? Whether he lived there or resided there. Correct, Your Honor. Okay. So when did he stop living there? Well, so he lived there on and off, as you mentioned, for three to four years. But he lived there the day before, didn't he? He lived there on and off. We don't know if he lived there the day before. What do you mean on and off? She said that his statement was, I think, four years, and if he wasn't in jail, he was living there? It was three to four years. There was also testimony exactly that whenever he was not in jail, and also some indication in the record that he might have been with his wife the night before. So? But the fact that he's with his wife doesn't mean that he doesn't reside. It does, Your Honor. Why? In this case specifically, defendant never had his own set of keys to this apartment. Never. So is that the only criteria? No, Your Honor. The additional criteria is whether he had an independent basis to enter this apartment whenever he wished. That's not the case here. He had no independent basis or the ability to enter this apartment without Shalonda Harris's permission. Why is that? Because she was leaving the keys. Apparently she left them under, you know, he could come and go when he wanted because she was leaving the key. Her testimony was that at times she would leave him keys, correct? From time to time. From time to time. Yes. So that he could come and go as he pleased, correct? Yes, Your Honor. So is there any evidence that tells us when he left or he stopped staying at that location? When Shalonda Harris told him he could not live there. He could not come back. He could not enter her apartment. She's the one. How do we know that's her apartment? We know she's the custodial person in this case because she has possession of the keys, which she's the one that allows the defendant to have those keys whenever she decides he can have those keys. Defendant doesn't have a complete uninhibited right to enter that apartment. So you're saying the determining factor is whether somebody who's loose sometimes has to do with keys? That's it? Just keys? Whether they have, and this is something the Illinois Appellate Court has held before, whether the individual has a history of casual entry without the permission of the custodial individual. In what case are you relying on? This is Williams, Your Honor. In Williams, it was a husband and wife. They were going through a divorce proceeding. There were some orders of protection against the defendant, but even during the pendency of these orders of protection, the defendant lived at the home. However, the court found that the defendant never lived inside of that home without the wife's permission. And, in fact, on the day that he entered the home. Because of the order of protection? No, Your Honor, because he lived there also during the time that the orders of protection were in place. No, but she could say, she could determine when he lived there. Exactly. That's different because there's an order of protection. So she doesn't have to live there at all, but she allowed him. That's not our situation, is it? It's a very similar case to our situation where Sholanda is the individual who has control of the keys. Without Sholanda, you could not enter the apartment. But there's an order of protection in that case. We don't have an order of protection. That's correct, Your Honor. So he has no right of entry unless she allows him to enter in that case, William's case. And same in this case. Why? Because we don't know if she owns it or not. Where in the record is there any evidence that she's a lease or that she pays rent or he doesn't pay rent? Your Honor, the burglary statute does not require proof of ownership. What it does require is a show of the right of possession and the right of occupancy by Sholanda, who is the custodial person, as against the defendant. In this case, Sholanda has the right to occupancy and to possession, whereas the defendant does not. Based on? So the right to possession, for instance. Sholanda has the keys. How do we know that? She said she lived there, right? Yes. Is that the evidence that she had the right to possession? Or is that just evidence that she lived there? Well, it's uncontradicted that the defendant could not enter that apartment on that date. Why could he not enter? Now, what's that evidence? He had no keys. Just because he had no keys means he couldn't enter that apartment because he had no keys, period. And he had no authority to be there. Well, excuse me, Justice. The day before, he had no keys, correct? Yes, correct. Did he not live there the day before? Or during that three or four years, he did not live there? Only if Sholanda allowed him to come into that apartment. That's the – And what does the term, come and go as he pleased, mean? You have the keys. You have free access to your home. Your home is a place you can enter and exit as you wish. The preliminary – What's the evidence for committing a felony or theft inside the residence? Your Honor, there's much evidence indicating that the defendant committed theft inside. And he had the intent to commit the theft. Now, if he had burst through the window in the manner he did and took out his own clothes, would he have committed a theft? Those are not the facts here, Your Honor. If he had done that – If he had taken – his clothes were there, right? She said he kept his blinds there. If she said, don't come back, get your belongings out of there, and he went in forcibly, no doubt about it – And without authority. And took his own clothing, would that be a theft? If Sholanda had told him not to come inside – Yes. And he – That would be an illegal entry. And what is the theft that he committed therein? In that case, I'm not sure that there would be a theft. However, Sholanda specifically – Sorry, Your Honor. There was a theft. There was a theft of the computer, which he owned half of, and then he gave to the police after he cut his arm and he left, and they gave it back to her. He also admitted to Officer Tenton that he took her keys. He said, I grabbed her keys off the table. Her keys, not his keys. Her house keys. I thought they were on the bed. They were on the bed, Your Honor. They were inside the house when he entered it. He broke in through the window. He broke off the bar to the window. He knew that entry was unauthorized. He knew he had no other way to get in because Sholanda had told him he could not come in. He was well aware of it. He knew that she was calling the police on him twice while he was trying to break in. He knew he had no authority. And then he took her keys. He took the computer. He took her computer out of the house. There's nothing better to show that he intended to commit a theft therein. The case law seems to indicate that in the home invasion statute, there was an effort by the legislature to not get involved with domestic disturbances as a home invasion offense. Is there any similar intent or indication by the legislature with respect to residential burglary? Your Honor, I am aware. In other words, to take a domestic disturbance out of a residential burglary statute? I am not aware, Your Honor. But what I do know is that this couple was not married. Marriage is. Marriage, you're not saying they have to be married in order to have it domestic. No, absolutely not, Your Honor. Do you think the legislature intended to have domestic disturbances included within the concept of residential burglary? I think what the legislature intended was to look at the facts of the case. And in this fact, under the facts in this case, what we do know is that the defendant was told by Shlonda several times not to come into her house. He had no keys to enter the house. He broke in through the window and he stole her computer and her keys and ran away. If he had such a right to stay in that apartment, why didn't he just stay in there? Because he was staying with his wife the night before. And she got mad at him. She told him, don't come back. Stay with your wife. It's a domestic, correct? He got convicted of domestic battery. Correct. So my question is, do you think the legislature, in their wisdom, intended for domestic disturbances to be included within the residential burglary statute, just as they tried to eliminate or diminish the likelihood of a domestic disturbance being involved in home invasion? Yes. There was an amendment to the act that added of another, which was designed evidently to take care of the domestic disturbance issue. And if the defendant had the right to occupancy and the right to possession of this apartment, then we wouldn't be here. This wouldn't be such an issue. The problem here is- Well, they wouldn't be here if the state had charged them with criminal damage to the property, right? I mean, a Class I felony seems to be, to me, a very severe felony for a domestic disturbance. Your Honor, the facts of this case are fairly severe. He entered that home through the window. Breaking the window, he pulled Shalanda's hair. He was violent. He then went and stole her computer, grabbed her keys off the table, keys that he had no right to take. And he's angry. But that's not the issue here. Let's look at the definition of dwelling, which is set forth in 5-2-6B, specifically relating to Section 19-3. It says, for purposes of Section 19-3, dwelling means an apartment in which, at the time of the alleged offense, the owners or occupants actually reside. So the question is, you're contending he's not an owner or occupant. He doesn't have to be an owner. He could be an occupant. So it doesn't matter if he has keys or not. He can still be an occupant. So it isn't an issue for us then whether he actually resided there. And she said, I'm not going to let you in. I mean, he could have very easily done the same thing to her. Absolutely not, Your Honor. He could not. Why not? He didn't have a way of getting in. It doesn't matter. You don't have to be the owner. You just have to be an occupant. Right, but he couldn't be an occupant if he could not enter the apartment. I don't know if he kept the doors unlocked. But she didn't. No, he didn't. If he kept the doors unlocked, he could enter and exit, right? Apparently, up until the moment she got the phone call, he did have access to the apartment. It was only when he called that she realized that he didn't come home last night and then said, get your belongings out of here. Don't come back. And all those belongings were were some clothes. Shalonda specifically testified he kept just basically clothing there. There's no evidence he kept anything else. He could have. There's no evidence that he had anything else to keep. But that's not the issue. The issue is to me that he actually resided there. Not on March 16, 2013, Your Honor. Absolutely not. Well, he did until that phone call. Would you agree with that? Up until that phone call, he stayed there? No. Again, he had to get Shalonda's permission to enter the apartment. But there's nothing. We're in the statute that says you have to have permission. But it says the alleged offender is the owner or occupant. An occupant is not necessarily an owner. How about a child that goes away to college and the parents say, we're not going to let you in. You may not have keys. But that may be where they actually reside. Let me ask you one question. On cross-examination, I think it was the first question asked of the female, the girlfriend. Yes. Because she said we were boyfriend-girlfriend. Was my client living with you on March 16, 2013? Answer? Yes. The actual question was, had the defendant been living with you? On March 16th. Yes. That was the question. And she said yes. And that was the day of the incident, correct? Yes. Yes. Okay. So how do you square the victim saying the defendant lived with me on the date that this happened with him not living there? Your Honor, that's isolating one statement from the rest of the testimony and from the rest of the evidence. The rest of that evidence showed that he no longer lived there once Sholanda told him he could not come in. He could never come in without her saying, okay, I'm home. You can come in. I'll unlock the door. Okay, you can come in because I'm going to leave you my keys for this specific limited amount of time. And only then and then can you come inside. There's no evidence that the defendant could freely come and go. He had no independent basis absent Sholanda's permission to get into that apartment. Well, the same logic would apply if they were getting along famously on March 16th and then in the middle of the day they got into an argument and she said, leave my house. And he said, I'm not going anywhere. Under the residential burglary statute, it's a crime to remain in a premises. So the moment she says leave and the moment a boyfriend says no, he is now in the midst of committing a residential burglary. Does that make any sense? Your Honor, those facts are very different from the case at hand. No, but your logic suggests that that is a crime because once I remain in the dwelling place, although I was invited in, the statute says if I remain under your logic because I was told to leave, I'm now one step further towards a class one felony. I really don't think the legislature had that in mind. I don't, but tell me I'm wrong. No, Your Honor. Under the facts of this case, he committed residential burglary. He was not inside the home when she told him, please leave. I understand, but I'm saying your logic suggests that once you're told to leave and you don't, you are now unlawfully there and you are one step closer to a class one residential burglary. That's why the legislature requires us to look at the totality of the circumstances and the facts in the case. We know that Shawanda was the custodial person here. We know that her right was superior to that of the defendant. How do we know that? Who had the keys? She had the keys. She was inside of the apartment. So the most important thing here is the keys. The most important thing, based on the facts, is whether the defendant had the ability to come and go as he pleased. Can you occupy it? But isn't under the statute defines dwelling as an occupant who actually resides. It doesn't say anything about keys. It doesn't say anything about coming and going. Right, Your Honor, but there is case law that requires a history of casual entry without permission of the custodial person. You're talking about William. Yes, Judge. There's also case law that indicates that you have to show the right to possession and the right to occupancy, which the defendant could not show in this case. He had no right to possession. He had no keys. He didn't have a permission. He came in through the windows. Why does he have to show it? I thought you had the permission. We do, but now we're on appeal, Your Honor, and he's claiming that the state failed to prove beyond a reasonable doubt that he's guilty of residential burglary. Right. So he has to show that no rational trial of fact could have found him guilty. Right, but there's no evidence that he wasn't the owner. We do not need to show ownership, Your Honor. Well, you just said you had to show that she had a possessory interest? Yes, and an occupancy interest. Okay. So where in the record does it show that she had a possessory interest? She lived there. She was inside of the home. She had the keys, which she could or did not have to give to the defendant. She could deny him access any time, any time. She could deny him access. Well, that means that he may have resided there, but then why couldn't he have done that? Well, actually, you didn't really answer Justice Pierce's question because the statute allows somebody to say if you remain here. So in this case, if they were both inside the house, the apartment, and she said, get out. How about the situation where someone owns an apartment, pays rent, does all that, and says to their friend, you can come and go when I tell you. And they had this relationship for three or four years, and that person keeps his clothing there and other belongings and sleeves there, right, and comes in and exits with permission. Does that make it any less his residence? It's a conditional residency. It's contingent upon approval, right? Yes. So up until March 16th, is it fair to conclude that based upon the totality of the evidence, that this three- or four-year relationship of boyfriend-girlfriend, he lived it, according to her? Sure. On and off. He did. But again, he had not lived it. So you're saying it ended immediately at that 10.30 phone call. That's when at 7, right? Yes. That's your position. And when she called the police and when he- He doesn't know that. He did. He told, I believe the testimony was that- The only way he would know that in the case, the best evidence for the state, the only way he would know that he no longer had authority in a classic legal sense is when she said, don't come back, right? And she did. Get somebody to get your belongings out of here, right? Yes. So that would be at like 10.31 in the morning, right? At whatever time the phone call happened. Yeah, whatever time the phone call. So at that point in time at the phone call, that's when it ended according to the evidence, correct? He absolutely knew he couldn't go. He couldn't go there. At the time of the phone call, correct? Yes. Before the phone call, there's no evidence that indicates that he could not enter that apartment. The evidence does indicate he could not enter it without her permission. Right. But formally, he was not aware of that formally until she revoked any previous authority at 10.30 in the morning. Well, he knew that she could revoke it at any time. But you're conflating the two things, and that's what I'd like you to try to explain. Okay. It says, the statute says, without authority, right? That's what you're talking about. Yes. That's not an issue, okay? She terminated authority. But that doesn't answer the question, right? Because it says, entering the dwelling of another. That had nothing to do with authority. So whether she said you can or can't come in does not answer the question of whether it was a dwelling of another. So the only thing you've been able to tell us that it's a dwelling of another is because of the keys. And someone can be an occupant without having a set of keys. So, you know, where in the record is there any evidence that this was not also his dwelling? I can't think of a case where someone who doesn't have keys is living somewhere. I can't. Well, there are places that people don't lock their doors. And you can be an occupant. You know, we're talking about an occupant. You don't have to have keys. You don't have to. You could have other ways to get in. Just leave it unlocked. Some people leave their houses unlocked. But here we know that's not the case. Here we know Shalanda kept the door locked. And that the only way he could come and go is if she said, sure, you can come in and... But that doesn't mean it's not his... I mean, he's still an occupant. He doesn't own it. You're right. But you said, you know, it doesn't matter if he owns it or not. So I don't see... I'm trying to understand why this is not also his dwelling place. Your Honor, we can even look at the case cited by the defense, Gause, the 40-year-old California case. In that case, completely distinguishable from here, the defendant had an absolute right to enter the dwelling at all times. If she had given him keys, right? Your theory is, or your evidence is, with or without a key, she told him he could no longer be there. Don't come back, right? So whether he had a key or not, it didn't matter. It's her statement that he can't enter the location. The keys very much matter, Your Honor. Well, if he had a key, and she said the same factual scenario, are you saying that he could not have committed residential burglary because she told him he couldn't come in, but he had a key so he could come in anyway? The facts in that case would be much more favorable to the defendant. That would show that he could come and go as he pleased. He had a history of... In that case, if you have keys, you have a history of casual entry without permission of the custodial person. That's what's required. I don't understand why that is dependent. You're saying she can depend on who has the keys. And the facts of the case. Well, but we know he didn't have authority. So if a teenager lives in a house and the parents say, No, you're not going to come into our house anymore. We're not going to let you in today. And then he goes and takes the lawn mower. Is that residential burglary? Well, is that minor? He doesn't have keys. The parents let him in when some kids don't have keys. Throw him out of the house. Throw him out of the house. Get out of here. Don't come back. When he takes the lawn mower. If he's a minor and those are his parents. Let's say he's 18 years old. And that's where he has his clothes. That's where he lives. And his parents say, Well, you can't come in anymore. We don't want you here. He lived there until that moment. No keys. It depends on the facts of the case. Tell me the facts. No keys. He lives there by permission of his parents. He's 18 years old. A lot of parents having their kids come back after they graduate high school. If he's class X, what extended sentence would be applicable here? It's actually not an issue because we have conceded the third issue, Your Honor, with respect to sentencing. And with respect to Justice Hyman's question, I believe GL is a case that would be helpful in this case. In that case, it was a delinquent minor. The court found that he had not been living there. The parents, he was actually in a home of some sort trying to get treatment for, I believe, drug addiction. And the court found that there needed to be a right to possession and a right to occupancy. The court found that the defendant broke into the house without authority. He had no right to possession, and he had no right to authority. He was no longer living at that home. And, in addition, the court found that – But in this case, we don't have the – he's not at some other facility. He's been there on a consistent basis for several months before that date, March 16th, right? We – the record is silent. All we know is that he had been living there on and off whenever he wasn't in jail or – Right. That was the only exception I saw. Or whenever she would not give him the keys. Would he qualify as an adverse possessor? I'm not sure, Your Honor. I'm not sure. He wasn't even inside of the apartment. What about the – how do we treat the defendant's statement that the state offered as substantive evidence, is that he co-owned the computer? Can he steal something he co-owns? Is that the theft that he was convicted of in order to have a residential burglary? Your Honor, it was the trier of fact in this case, which was the trial court in the bench trial, that weighed the evidence and found that that computer was Shalanda's. She testified that she had bought the computer three to four years before for $400. Right. It was her computer. But he wasn't convicted of theft? Because of the amount of money that would have had to be proven, Your Honor. But he could have been convicted of a misdemeanor theft. Yes. But he wasn't. How do we know that the court didn't consider his statement that is in evidence, is the state's evidence, that he co-owned the computer? How do we know that? Because the court found him guilty of residential burglary. She found – the trial court specifically found – What was the felony or theft that she found? She found in her ruling that the defendant entered that home when he no longer lived there. He took the computer and ran away with it. In addition, the other evidence – And he found him guilty of theft. So the only thing he left with was a computer, correct? He also took Shalanda's keys, which he admitted to Detective Tenton. He admitted those were not his keys. That's crucial. He knew those were not his keys. So he was convicted of entering the house with the intention of stealing the keys. Or the computer, or what? That's what I'm trying to ask you. He also stole a phone. He also took a phone out of that apartment. A $10 phone. Yes, Your Honor. And that was returned? I believe so by the police to Shalanda. Okay. Your Honor, the cases of Evans and Bell cited by the defense are distinguishable in this case. In Bell, those facts are inapplicable here. In that case, the State appealed the granting of a motion to quash. It was the defendant's live-in girlfriend who allowed police officers – gave them consent to search the defendant's computer, which contained child pornography on it. That's entirely different from this case. She was inside the home. She had her belongings there, and it was really an issue of consent. That is not the issue here. The issue is whether the defendant entered the dwelling of another. Similarly, Evans, 1987 First District case. From this court, that's a criminal trespass to property case. The complainant called the police on a roommate she wanted to evict. There was evidence that the roommate moved in without signing a lease, but she had given the complainant some down payment or some sort of a deposit. And in that case, the court said that the forcible entry and detainer statute was the only remedy for that individual who allowed the person to move in without signing a lease. Okay. Try to wrap it up. Yes, Your Honor. Thank you. Taking the facts in the light most favorable to the people in this case, it is clear that any rational trier of facts could have found the essential elements of the crime of residential burglary beyond a reasonable doubt. The evidence shows that the defendant had no keys. He had no authority or permission to enter that apartment on March 16, 2013. And as such, we ask that you affirm the trial court's ruling. I just want the last bit. Because you keep talking about authority, which is not the issue. You even said just now that the issue is his dwelling place as well. That's the issue. Besides the keys, what is the evidence? It is whether he had the ability to come and go as he pleased, which he never had. Okay. So as you say, the issue then is if he did not have the ability to come and go as he pleased, and if you don't have the ability to come and go as you please, then you cannot be an actual resident. Your Honor, what it boils down to is whether he had an independent basis or the ability to enter that home without Sholanda. And that's not the case here. He had no such ability. Thank you very much. Thank you. Mr. Weinstein. Thank you, Your Honor. Two points. First of all, I would say if the issue is whether he had the ability to come and go as he pleased, the complaint testified that he had the ability to come and go as he pleased. That's the first point. The second point is... Yes, she's the one that allowed him to come and go as she pleased. It was her choice. Well, I would say they made an arrangement. I would say they had an arrangement, is how I would put it. Well, and it was her choice that he could come and go as he pleased, right? It wasn't his choice. It was her choice. She had to let him in. It could be his choice or it could be her choice or it could be an agreed-upon arrangement. No, because she had to give him the keys. She had to let him in, right? He doesn't get in unless she says so. Well, I would say that not necessarily. I mean, they agreed that she had the keys, but there's no evidence as to why he had the keys. It could have been because of the choice. It doesn't matter. It doesn't matter. He was in hot. Right. She had the keys. Right. He couldn't get in there without her permission. That's the argument. Right. It was her choice. So, in light of that, he did not reside there unless because she could keep him out there if she wanted to. It was her choice. Well, then I would respond with the case of people who would be bailed. And, as you said, the state points out it was a consent search case. But the point there was that the girlfriend, who was the person who consented to the entry, the girlfriend was the defendant, had actual authority to consent. And to actual authority to consent, the state had to show that her right to occupy had to equal or exceed the defendant's. And in that case, like here, the girlfriend had no keys. She got in because he let her use her truck, which had the garage door opener. Well, when he was using her truck, he put keys out, or she would go through the window. And, in fact, in the case, in the day all this came to the head and everybody was arrested, she had gotten in through the window. So I would say that Dahl says that the simple fact of keys does not show occupancy or not. You have to look at whether the person lived there. And he did. Well, okay. Lived there is a conclusion. He was an occupant. He was an occupant, a resident. That was his home. And the criteria for that is? Criteria for that is where did he live at and how you know he was living there is because she said so. And with that, unless there are any other questions, we ask for an hour reversal or a new trial. Thank you. All right. Thank you very much for your fine work on the issues in this case. We will take this matter under advisement, recordings, and recess. Thank you.